IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TINA VORDING, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:19-cv-01029-JHE |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Tina Vording ("Vording") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Vording timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED.**

**I. Factual and Procedural History**

On March 23, 2016, Vording protectively filed for a period of disability and DIB, alleging disability beginning May 23, 2012. (Tr. 171-72). The Commissioner initially denied Vording's claim on August 11, 2016 and Vording requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 84-88, 91-92). The ALJ held a hearing on April 12, 2018 and subsequently denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

Vording's claim on August 15, 2018. (Tr. 15-31, 37-61). Vording sought review by the Appeals Council, but it denied her request for review on May 20, 2019. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On July 2, 2019, Vording initiated this action. (*See* doc. 1).

Vording was forty-two on her alleged onset date and forty-eight on the date of the ALJ's decision. (Tr. 18-31, 43). Vording has past relevant work as an intake clerk at a community action center, a combination job of dispatcher, a tow-truck driver, a home health attendant, a school-bus driver, and a lunchroom supervisor and has a high school education. (Tr. 29, 212-219).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[2] In general, the legal standards applied are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Vording has not engaged in substantial gainful activity since May 23, 2012, the alleged onset date of her disability. (Tr. 21). At Step Two, the ALJ found Vording has the following severe impairments: morbid obesity, degenerative joint disease, sleep-related breathing disorder, diabetes mellitus, peripheral neuropathy, carpal tunnel syndrome, lymphedema, anxiety disorders, and major depressive disorder. (Tr. 21). At Step Three, the ALJ found that Vording does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Before proceeding to Step Four, the ALJ determined Vording's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Vording had the RFC

> to perform light work with the following limitations: the claimant cannot climb ladders, ropes and scaffolds and is limited to frequent stooping and occasional

      kneeling, crouching, and crawling. She is limited to frequent handling and fingering bilaterally. The claimant cannot be exposed to workplace hazards such as moving mechanical parts and high, exposed places. She is capable of simple and complex tasks, but not at a production-rate pace. The claimant has the ability to make simple work- related decisions and can tolerate occasional interaction with the public and occasional interaction with co-workers; and she can accept instructions and respond appropriately to supervisors, where the interaction occurs occasionally throughout the workday.

(Tr. 24).

At Step Four, the ALJ determined that Vording could not perform her past relevant work as a combination job of dispatcher, a tow-truck driver, a home health attendant, a school-bus driver, and a lunchroom supervisor. (Tr. 29). At Step Five, the ALJ found that, based on Vording's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Vording could perform: specifically, an assembler, sorter, and a cleaner in a housekeeping setting. (Tr. 30). Therefore, the ALJ determined Vording has not been under a disability and denied her claim. (Tr. 30).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Vording raises four issues. First, Vording contends the ALJ failed to accord proper weight to the opinion of Dr. Janie T. Teschner, Vording's treating physician, and failed to clearly articulate specific reasons for discounting it. (Doc. 17-25). Next, Vording argues the ALJ failed to give

5

Vording's obesity proper consideration pursuant to SSR 02-01. (*Id.* at 28-29). Third, Vording claims the ALJ improperly applied the Eleventh Circuit pain standard and erred in evaluating the credibility of her complaints. (*Id.* at 29-37). Finally, Vording argues the ALJ's decision was not based on substantial evidence. (*Id.* at 37). Specifically, Vording alleges the ALJ erred in reliance on vocational expert ("VE") testimony because the hypothetical question did not accurately state Vording's pain level or her residual functional capacity. (*Id.* at 37-38).

### A. The ALJ Properly Considered Dr. Teschner's Opinion

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good casue' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3D 1155,1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). When determining the weight given to a physician's opinion, an ALJ considers numerous factors, including the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(c). Additionally, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232,1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The record does not contain a great deal of information regarding Dr. Teschner's treatment of Vording, but what is there begins with Vording's visit to Dr. Teschner at Mercy Medical Clinic on February 5, 2015. (Tr. 372-77). At that visit, Vording complained of back pain, swelling, and

neuropathy, and sought a referral to UAB. (Tr. 375). Dr. Teschner's notes indicate the reported severity of Vording's symptoms was "10." (Tr. 375). Dr. Teschner reviewed and reconciled Vording's medications and ordered refills of some of them. (Tr. 377).

Dr. Teschner provided a physical capacities form on September 6, 2017. (Tr. 504). Dr. Teschner indicated Vording: could sit upright for one hour at a time; could stand one hour at a time; would be lying down, sleeping, or sitting 4 hours in a workday; and would miss more than 5 days of work in a 30-day period, due to lumbar radiculopathy. (Tr. 26, 504). On March 6, 2018,[4] Dr. Teschner performed a physical examination at the request of Vording's attorney. (Tr. 735-42). "Her physical findings included antalgic gait, reducible right ventral hernia, right fifth-digit ulnar deviation, lumbar tenderness and decreased range of motion, positive straight-leg-raising test, reduced right lower extremity strength, reduced bilateral grip strength and dexterity." (Tr. 26, 735-42). Dr. Teschner completed a second physical capacities form on April 8, 2018 in which she indicated Vording: "was capable of lifting up to 5 pounds occasionally, she would miss 7 to 8 days of work in a 30-day period, and her medications would cause numerous side effects." (Tr. 26, 743).

The ALJ accorded partial weight to Dr. Teschner's opinions for several reasons. First, the ALJ indicated that Dr. Teschner's examining and treating relationship with Vording was "short [and] limited to one contracted examination." (Tr. 27). The ALJ also found Dr. Teschner's opinions inconsistent with findings from the whole record, including other treating and examining physicians' opinions, and Vording's own testimony. (Tr. 27-28). Third, Dr. Teschner did not state a basis for the physical limitations presented in the April 2018 opinion and failed to note any specific medications responsible for Vording's alleged side effects. (Tr. 26). Finally, the ALJ

---

[4] The ALJ's opinion erroneously described this examination as having occurred on "March 6, 2016," (tr. 27), but there is no indication that this is anything other than a typographical error.

7

rejected the mental limitations Dr. Teschner imposed on the basis that no evidence in the record supports that Dr. Teschner has any expertise in mental health. (Tr. 28).

At the outset, the ALJ's analysis of Dr. Teschner's opinion is based, at least in part, on a mischaracterization of the treating relationship between Vording and Dr. Teschner. It is true that Dr. Teschner examined Vording at the request of her counsel in 2018, but the ALJ ignored that the treating relationship extended back to 2015 and consisted of more than just that examination. Although Dr. Teschner's notes from 2015 are sparse, they exist. The Commissioner attempts to salvage this by arguing that "[t]he ALJ's statement that Dr. Teschner only examined Plaintiff on one occasion accurately applies to her September 6, 2017 opinion." (Doc. 18 at 12). On the contrary, the ALJ specifically referenced a single "contracted examination," which does not describe the February 2015 visit to Dr. Teschner for treatment—but does describe the 2018 examination.

While the ALJ clearly acknowledged the visit to Mercy Medical Clinic in February 5, 2015, in describing Vording's treatment history, (tr. 26), the only reasonable conclusion is that the ALJ made a factual error in failing to specifically tie that visit to Dr. Teschner. That does not necessarily require remand, though. "Where an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination." *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Considering the record, as well as the rest of the reasons the ALJ cited, the ALJ's factual error was harmless.

Rather than relying solely or primarily on the treating relationship, the ALJ found Dr. Teschner's opinion was not bolstered by the evidence. This was good cause to discount it. Specifically, the ALJ found Dr. Teschner's opinion lacking because it was not clear whether Dr.

Teschner had Vording's "entire medical record before reaching her conclusions," as the March 2018 examination was based on history provided by Vording herself. (Tr. 27). This is supported by the fact that Dr. Teschner reported there was no MRI of the lumbar spine for review, despite two such MRIs of the lumbar spine in the record: an MRI performed on March 12, 2015, (tr. 523, 735-42), and a second MRI on August 13, 2015, (tr. 526). Additionally, as discussed in the ALJ's opinion, a June 2016 visit to Dr. Celtin Robertson, an examining physician, showed a normal gait, no lumbar tenderness, normal gross/fine motor skills, and a negative straight-leg-raising test. (Tr. 26, 494-498). The ALJ noted that Vording's back pain "has been conservatively treated, with no recommendations for surgery . . . ." (Tr. 27). Furthermore, the ALJ determined Dr. Teschner's limitations were inconsistent with Vording's ability to work part-time as an intake clerk, interviewing applicants and entering data into the computer, which Vording was actually doing at the time of the hearing. (Tr. 27-28, 44-45, 495). Finally, the ALJ had previously noted Dr. Teschner's April 2018 opinion was cursory on some points: she failed to provide any evidence in support of the physical limitations she cited and failed to indicate which medications were causing Vording's alleged side effects. (Tr. 26). This was also good cause to discount the opinion. Based on this, the ALJ did not err in declining to afford Dr. Teschner's opinion controlling weight.[5]

### B. The ALJ Properly Considered Vording's Obesity

Next, Vording argues that the ALJ failed to give her obesity proper consideration pursuant to SSR 02-01p. (Doc. 17 at 28-29). The Ruling provides that, at step three of the sequential evaluation, the agency "will not make assumptions about the severity or functional effects of obesity combined with other impairments," but "will evaluate each case based on the information

---

[5] The undersigned notes that Vording's argument boils down to a single sentence: "The explanation given by the ALJ for not accepting the opinion of the treating physician was not adequate." (Doc. 17 at 28). The explanation's inadequacies are left entirely to the imagination.

in the case record." SSR 02-01p, ¶ 7. The ALJ found Vording did not have "an impairment or combination of impairments" that met or equaled the severity of listed impairments. (Tr. 21-23). Specifically, the ALJ noted his consideration at step three of Vording's morbid obesity in combination with other impairments, despite there being no listing for obesity in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Vording cites *Early v. Astrue*, 481 F.Supp. 2d 1233, 1239-1240 (N.D. Ala. 2007) (stating "when a claimant has multiple impairments they must be considered in combination) in support of reversal for failure to consider obesity. The Eleventh Circuit has emphasized "an ALJ's statement that he has considered the combined effect of a claimant's impairments at step three is sufficient to establish that the ALJ considered the impairments in combination throughout the sequential evaluation." (Doc. 18 at 14) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002). The ALJ notes, pursuant to SSR 02-01p, "I have evaluated claimant's obesity and accompanying impairments in terms of their possible effects on the claimant's ability to work." (Tr. 27). Furthermore, in the RFC assessment, the ALJ includes a specific analysis in regard to Vording's morbid obesity in combination with "degenerative joint disease, sleep apnea, neuropathy, carpal tunnel syndrome, and lymphedema," finding Vording's obesity warranted "a reduction to a restricted range of light work." (Tr. 26-27). Consequently, the ALJ's consideration of obesity combined with other impairments at step three of the sequential process and as part of the RFC assessment reflects the ALJ's adequate evaluation.

### C. The ALJ Properly Applied the Pain Standard in Evaluation of Subjective Complaints

Vording's third challenge is to the ALJ's application of the Eleventh Circuit "pain standard" and evaluation of her subjective complaints. The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his

or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote,* 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 at *4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, SSR 16-3p, 2017 WL 5180304 at *4-5. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not … whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). If an ALJ

11

discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219,1225 (11th Cir. 2002).

After considering the evidence, the ALJ cited the appropriate standard and found Vording's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but then determined Vording's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25). Vording states that the ALJ's analysis of her subjective complaints "is deficient," appearing to imply the ALJ incorrectly discredited Vording's testimony based on the lack of objective evidence and failed to articulate his reasons for doing so. (Doc. 17 at 29-37).[6] However, the ALJ partially credited Vording's subjective complaints when he limited Vording to a restricted range of light work, conceding that Vording has physical and mental limitations, but concluding they did not rise to the level of total disability. (Tr. 27).

At the hearing, Vording testified she was unable to work full time due to neuropathy, lymphedema, back pain, carpal tunnel syndrome, and anxiety. (Tr. 47-53). Vording testified experiencing level 7 pain in her hands and feet and that she is unable to stand up without leaning over but notes she has not had any treatment specifically for her back. (Tr. 48, 54-55). Vording testified that she had recently begun wearing wrist braces to see if they would improve her carpal tunnel, but they hindered her ability to reach the mouse and type while working. (Tr. 48). Vording

---

[6] The Commissioner notes that Vording suggests that her subjective complaints establish total disability without pointing to specific errors the ALJ allegedly committed in assessing her complaints. (Doc.18 at 15). Vording's argument provides little to no analysis and could be considered waived or abandoned; however, the court will address the claim for the sake of the implied argument. *See Ammons v. Saul*, No. 4:19-CV-00495-SGC, 2020 WL 4335815 (N.D. Ala. July 28, 2020) ( The Court agreed with Commissioner's argument that the plaintiff's failure to discuss the ALJ's decision or "point to any specific error" should result in waiver or abandonment of the argument entirely).

also testified that, as a result of her lymphedema, she is unable to wear shoes or cannot have them tied. (Tr. 51-52). Vording lives with her 15-year old son who helps her get dressed and wraps her legs to reduce swelling. (Tr. 52). In regard to additional limitations, Vording testified that she could not sit in a wooden chair for more than 15 minutes, is incapable of picking up boxes of files from the floor at work, and struggles to grocery shop by herself. (Tr. 49, 54).

The ALJ found Vording's subjective complaints are not entirely consistent with the medical evidence in the record. Specifically, the ALJ stated:

> The Claimant has physical and mental limitations, but they do not rise to the level of disability. Her back impairment has been conservatively treated, with no recommendations for surgery; and she has not received any recent treatment for sleep apnea. The claimant has reported pain, but her reports of severe pain have been intermittent; and her edema also has fluctuated, with no swelling reported at some visits. The claimant's swelling decreased after diagnosis and treatment of lymphedema. The claimant has recently received braces for carpal tunnel syndrome, and records do not show that daytime wear has been recommended. The claimant has reported significant limitations in her activities of daily living, but these limitations cannot be verified with a reasonable degree of certainty and they are inconsistent with the weight of the evidence, including the claimant's ability to work part time doing intake for Community Action. This job involves walking up and down the hall to greet people coming in to apply for benefits and entering their information into the computer to determine if they qualify. The claimant has reported social anxiety and some degree of isolation, but she has been able to work and handle her own medical care. She reported difficulty performing her job, but the assistant director at Community Action reported that the claimant had very few limitations.

(Tr. 27).

Substantial evidence supports these findings by the ALJ. In June 2013, CRNP Raymond Doty noted tenderness in the lumbar spine and edema in the legs, but also normal musculoskeletal range of motion, muscle strength, and stability in the extremities. (Tr. 384). In July 2013, Vording had x-rays done on her back that showed spondylosis at the L5-S1 joint and mild degenerative joint disease. (Tr. 386-389). In August 2015, Vording underwent a lumbar MRI, which showed severe right and moderate left facet degenerative change at L5-S1, but no spinal cord or foraminal

13

narrowing and no nerve root impingement. (Tr. 431-436). In November 2015, Vording was placed on tramadol for the back pain and encouraged to remain consistent with medication by examining physician, Dr. Odjegba.  (Tr. 443-448).  Examination notes throughout Vording's primary care at Quality of Life Health Services from 2013 to 2017 show that she was evaluated for edema and that the condition was intermittent with pitting edema only being noted a few times out of approximately two dozen visits. (Tr. 25, 378-474, 475-482, 483-492). Vording's pain level ranged from zero to level 8, with the majority of her visits reporting pain below moderate. (Tr. 25, 653-734).

The ALJ appropriately considered Vording's subjective complaints of pain and articulated sufficient and appropriate reasons for finding that her testimony was not entirely consistent with the medical evidence. In the absence of any argument from Vording that shows the ALJ incorrectly evaluated the medical evidence, substantial evidence supports the ALJ's decision to discredit Vording's allegations.

### D.  The ALJ's Determination is Supported by Substantial Evidence

Vording's final argument is that the VE's testimony is not supported by substantial evidence because it was based on an inaccurate and incomplete hypothetical. (Doc. 17 at 37). Specifically, Vording contends that "the hypothetical question relied upon did not accurately state [Vording's] pain level or her residual functional capacity" but instead assumed Vording could perform light work. (*Id.*).  The undersigned disagrees.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Further, the ALJ is "not required to include

findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the ALJ found that the evidence demonstrated Vording could not perform her past relevant work; however, there are jobs that exist in significant numbers in the national economy Vording can perform such as assembler, sorter, and cleaner in a housekeeping setting. (Tr. 30). The ALJ's hypothetical questions to the VE fully accounted for Vording's impairments and limitations, as demonstrated by the medical evidence of record, which is all that is required of the ALJ. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *McSwain v. Bowen,* 814 F.2d 617, 619-20 (11th Cir. 1987). Significantly, Vording fails to specify what information was incorrectly stated by the ALJ or left out by the hypotheticals posed to the VE. Accordingly, the ALJ did not commit reversible error in relying on them.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Vording's claim for a period of disability and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 4th day of November, 2020.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE